# IN THE COURT OF APPEALS OF IOWA

No. 22-0688
Filed August 31, 2022

**IN THE INTEREST OF L.S.,**
**Minor Child,**

**S.S., Father,**
 Appellant,

**A.J., Mother,**
 Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

The mother and father separately appeal the termination of their respective parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Teresa M. Pope of Branstad & Olson Law Office, Des Moines, for appellant father.

Raya Dimitrova of Carr Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Lynn Marie Vogan of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The mother and father separately appeal the termination of their parental rights to L.S., who was born in early 2021. The juvenile court terminated each parent's rights under Iowa Code section 232.116(1)(e) and (h) (2022); the court also terminated the mother's rights under paragraph (*l*).

We review termination decisions de novo. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa 2020). Termination of parental rights under chapter 232 follows a three-step process. *Id.* But our review on appeal is confined to those issues that—after being properly preserved—are actually raised and briefed on appeal by the parent challenging termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("We exercise our de novo review only with respect to issues raised and preserved at trial. Similarly, our review is confined to those propositions relied upon by the appellant for reversal on appeal." (internal citation omitted)). Because "each parent's parental rights are separate adjudications, both factually and legally," we consider each parent's appeal separately. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020).

**I. Mother's Appeal.**

On appeal, the mother focuses her argument on whether she should have been given additional time to work toward reunification with L.S.[1] The court may

---

[1] In her petition on appeal, the mother also "urges [us] to overturn the district court's denial of her . . . [m]otion for [r]easonable [e]fforts." We have not found a written motion for reasonable efforts in the record before us, and it is unclear to what the mother is referring. At the termination trial, the mother's attorney asked if she was "going to request out of this court today . . . to increase the time [she] spends with [L.S.]" and the mother said, "Yes." To the extent the mother intended this statement to be a motion for reasonable efforts, it was made too late. *See, e.g.*,

delay permanency and give the parent more time to work toward reunification when it can point to "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child" from the parent's care will "no longer exist at the end of the" extension. Iowa Code § 232.104(2)(b). The juvenile court declined the mother's request for an extension, concluding her recent progress—when compared to the life of the case—was not enough to convince the court that she could be reunified with L.S. within six months.

The mother admits she used methamphetamine during her pregnancy with L.S. The child was born more than ten weeks premature, and both he and the mother tested positive for methamphetamine and amphetamine at his birth. L.S. was formally removed from the parents' care in April 2021, when he was about two months old, before ever being discharged from the hospital. The mother continued to use methamphetamine until January 2022, when she entered inpatient treatment. According to the mother's testimony, she had been sober sixty-four days at the time of the termination trial in late March 2022. She was at level zero in substance-abuse treatment at House of Mercy, which has four levels. She testified it can take twelve to fourteen months to complete all four levels. But most people move from level zero to level one within the first thirty days, while the mother had been at level zero for nearly two months. Additionally, the mother has a long history of using methamphetamine; she testified she was thirty-three and had started using the drug when she was seventeen years old.

---

*In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) ("[W]e will not review a reasonable efforts claim unless it is raised prior to the termination hearing.").

While the mother had made some progress at the time of the termination hearing, it was—as the juvenile court put it—"ninth inning progress." *See In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights."). We commend the mother for the steps she recently took toward achieving sobriety and treating her mental health but, even if—in the best case scenario—the mother is still engaged with inpatient treatment in six months, we do not think L.S. could be returned to her care at that time. At that point, all of the mother's sobriety would have been achieved in an institutional setting; it would not show the mother can remain sober and safely parent L.S. in a less structured environment. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." (internal citations omitted)).

We agree with the juvenile court that delaying permanency for L.S. to give the mother additional time is not in the child's best interests. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (acknowledging the parent's "substantial progress" on their "rehabilitation journey" but finding termination was in the child's best interests because, "[g]iven the history revealed in the record of [the] case, the

journey [was] likely a long one and [was] far from complete"). We affirm the termination of the mother's parental rights.[2]

## II. Father's Appeal.

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (h). In his petition on appeal, the father only challenges termination under paragraph (e). As we need only one ground to affirm, *see In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012), and because the father's failure to make an argument challenging termination under paragraph (h) constitutes waiver of that issue, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we conclude there is clear and convincing evidence for termination under section 232.116(1)(h).

Next, the father argues termination of his parental rights is not in L.S.'s best interests. We are required to apply the best-interests framework set out by the legislature, which provides that "[t]he primary considerations are 'the child's safety,' 'the best placement for furthering the long-term nurturing and growth of the child,' and 'the physical, mental, and emotional condition and needs of the child.'" *P.L.*, 778 N.W.2d at 37 (quoting Iowa Code § 232.116(2)). While family integrity is important, *see In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006), the defining elements in a child's best interests is the "child's safety and his or her need for a permanent home." *Id.* at 802 (Cady, J., concurring specially).

---

[2] The mother "asserts that the denial of her request for additional time to reunify with her child[] violates her due process rights and equal protection under the United States Constitution and Iowa Constitution." The mother failed to raise these constitutional arguments to the juvenile court, so they are not preserved for our review. *See In re C.K.*, 660 N.W.2d 29, 38 (Iowa 2003) ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

As of the March 2022 termination trial, the father had not used methamphetamine for almost five months—since his October 28, 2021 arrest. But, due to his previous convictions for possession with intent to deliver (methamphetamine) and assault while participating in a felony, he was still on parole and living at the Fort Des Moines Community Corrections Complex. L.S. could not live with the father there, and it was not clear when the father would be allowed to move into his own apartment. At the December 2021 permanency hearing, the father testified he only anticipated being required to live at Fort Des Moines for two months. But, at the time of the termination trial nearly four months later, the father was still required to do so. And the father's sentences were not expected to be discharged until February 2024. The father engaged in mental-health therapy and substance-abuse treatment after he was sent to live at Fort Des Moines in early December 2021, and he was able to show insight and take some accountability during his testimony at the termination trial. But, as the juvenile court recognized, the father had also struggled to comply with the requirements of his parole, which raised questions both about whether his parole may be revoked and if the father's positive progress was the result of internalized changes or institutional oversight.

We recognize the positive strides made by the father; his intention to continue working on his recovery while helping others with their own is laudable. But it is undisputed that the father could not take over caring for L.S. at the time of the termination hearing, and it is not clear at what point in the future that would be possible. "[O]ur legislature has established a limited time frame for parents to demonstrate their ability to be parents." *Id.* at 800. In this case, it is six months.

*See* Iowa Code § 232.116(1)(h)(3). L.S. was never in the care of the father; he was formally removed from the parents' care before leaving the hospital almost one year before the termination trial. With these facts, termination of the father's parental rights is in L.S.'s best interests.

Finally, the father requests an additional six months to work toward reunification. *See id.* § 232.104(2)(b). But as we already stated, it is not clear when the father will be allowed to obtain his own housing and leave Fort Des Moines. And even after that takes place, the father will need some time to show he can remain sober and safely parent L.S. out in the community. L.S. has been out of the father's care nearly twice as long as the statutory time frame, so we view the termination proceedings with urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000); *see also In re Z.P.*, 948 N.W.2d 518, 523 (Iowa 2020) ("Our statutes reflect 'policies that are meant to keep children from languishing in foster care.'" (citation omitted)). Like the juvenile court, we conclude giving the father additional time to work toward reunification is not in L.S.'s best interests.[3] *See C.B.*, 708 N.W.2d at 92 (recognizing extensions could be appropriate in some circumstances but cautioning that "[t]he judge considering them should . . . constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shorted life for the child[] in a better home").

We affirm the termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**

---

[3] Like the mother, the father asserts that the court's denial of his request for additional time violates the constitutional guarantees of due process and equal protection. But, also like the mother's, these arguments of the father's have not been preserved for our review; we do not consider them.